Filed 6/24/26  P. v. Young CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B346130 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A525703) |
| v. | |
| DANNY JEROME YOUNG, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Victor D. Martinez, Judge.  Affirmed.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Stephanie C. Brenan and Melanie Dorian, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Danny Jerome Young appeals from the denial of his resentencing petition under Penal Code[1] section 1172.6. The resentencing court found defendant ineligible for relief because defendant admitted at a civil trial held after his criminal trial that he personally killed the victim. On appeal, defendant argues it was physically impossible for him to have killed the victim given the medical examiner's opinion at his criminal trial as to the time of death, and therefore his admission at the civil trial cannot be substantial evidence in support of the denial of his resentencing petition. We conclude resolution of any conflict between defendant's admission and the medical examiner's opinion was for the resentencing court, as finder of fact, to determine. Accordingly, we affirm.

## BACKGROUND

The record in this matter is extensive. Because the crux of the appeal is a purported conflict between forensic evidence at defendant's trial and defendant's posttrial admission that he killed the victim, we limit our summary of the proceedings below to the information relevant to that conflict.

### 1. *The crime*

Ten-year-old Ronald Tolleson, Jr., a resident of West Covina, disappeared on Friday, March 28, 1980. At approximately 5:00 p.m. that day, Tolleson's family received a telephone call from someone demanding $3,000 if the family wanted to see Tolleson alive again.

The family did not have $3,000, so with the assistance of police detectives, they placed $100 in $20 bills in a bag along with

---

[1] Unspecified statutory citations are to the Penal Code.

torn-up newspaper to simulate additional money. The family received a second call instructing them where to leave the money. Tolleson's father left the bag of money on a bench in a park as instructed.

Tolleson was found dead in defendant's garage on April 4, 1980. Defendant's home was two houses away from Tolleson's.

## 2. *Trial and sentencing*

An information charged defendant with murder and kidnapping for ransom, and alleged the murder occurred during commission of a kidnapping. The information further alleged two counts of attempted kidnapping unrelated to Tolleson and not relevant to this appeal.

Defendant concedes there was "ample evidence" at trial he participated in the kidnapping. We do not summarize that evidence.

The People called a medical examiner to testify regarding the victim's time of death, based on photographs and an autopsy report prepared by a different doctor. The medical examiner opined Tolleson most likely died Tuesday, April 1, 1980, four days after the kidnapping and three days before his body was discovered, although it was possible he died a day earlier or later, i.e., Monday, March 31 or Wednesday, April 2.

The medical examiner further opined Tolleson died by strangulation.

Defendant testified and denied participating in the kidnapping and killing, instead pointing the finger at defendant's brother and an unidentified man. He admitted, however, that he "tried to take advantage of the situation" by calling Tolleson's family on March 28 and demanding $3,000 as if defendant were the kidnapper. He admitted he paid an acquaintance to pick up

3

the bag of money Tolleson's father left in the park, and when he discovered the bag contained only $100 and torn-up paper, he told the acquaintance, " 'They bullshitted me.' "

There was evidence defendant left West Covina on March 29, 1980 and stayed in a motel in Fontana that night. He stayed in a friend's guest house in Ontario the night of March 30. On March 31 he was seen in a Claremont bus station and in Santa Ana looking for a place to stay. Defendant flew from Los Angeles to San Francisco on April 1, and stayed at a hotel in Stockton April 2 through 4.

In closing argument, the prosecutor stated he "never intended to prove" defendant himself killed Tolleson, and had "offered no evidence of that." The prosecutor "believe[d] . . . that the evidence has shown . . . that there was more than one person involved in this." Citing the medical examiner's testimony, the prosecutor said Tolleson "was kept alive Friday, Saturday, Sunday, at least, and according to the coroner, in all probability, even Monday." The prosecutor conceded defendant had left West Covina by Saturday afternoon and did not return to his home after that, but argued defendant was culpable even though he was not present when Tolleson was killed.

The jury convicted defendant of second degree murder, kidnapping for ransom, and the two counts of attempted kidnapping. The jury found true that the victim of the kidnapping for ransom charge suffered bodily injury and death. By stipulation of counsel, the trial court struck the kidnapping-related special allegations as to the murder count.

The trial court sentenced defendant to 15 years to life for murder, life without the possibility of parole for kidnapping for

4

ransom, and 11 years 4 months on the attempted kidnapping counts, all to be served consecutively.

### 3. *Resentencing proceedings*

In 2022, defendant filed a petition for resentencing under section 1172.6. The resentencing court held an evidentiary hearing on the petition on April 16, 2025.[2]

At the hearing, the People called Tolleson's father and an attorney, Peter Wucetich. Wucetich represented Tolleson's father in a wrongful death lawsuit against the City of West Covina and its police department. Wucetich testified that at the civil trial in 1989, defendant admitted under oath that he kidnapped Tolleson and murdered him by strangulation "several days after the kidnapping." According to Wucetich, defendant testified he worked alone with no one assisting him. Wucetich said there was conflicting testimony at the civil trial regarding the time of Tolleson's death, and defendant's testimony was more consistent with the plaintiff's expert's opinion.

Tolleson's father testified that defendant admitted at the civil trial to kidnapping Tolleson and killing him by strangling him with an electrical cord, and that defendant further testified he acted alone. According to Tolleson's father, defendant testified he killed Tolleson the day of the kidnapping.[3]

---

[2] The resentencing court initially denied defendant's petition at the prima facie stage, a denial we reversed. (*People v. Young* (Jan. 31, 2024, B327718) [nonpub. opn.].)

[3] Neither the People nor defendant offered the transcript of the civil trial into evidence. All information regarding that trial came from testimony at the evidentiary hearing.

Defendant also testified at the evidentiary hearing. He acknowledged he admitted at the civil trial that he killed Tolleson, but said that testimony was false, and he was not present when Tolleson died. Defendant explained he was suffering from ankylosing spondylitis at the time of the civil trial, which caused him pain and made it difficult to walk. He said he agreed to testify on behalf of West Covina and the police department in exchange for transfer to another prison where he could receive medical treatment.

After hearing argument of counsel, the resentencing court denied defendant's petition. The court found defendant was aware kidnapping endangered Tolleson's life, and that he acted with conscious disregard, thus establishing second degree implied malice murder as an aider and abettor. The court further found defendant was culpable under a felony murder theory as having "participated in [a] designated felony" and "acted with reckless indifference to human life."

The resentencing court also found the testimony at the evidentiary hearing "clarified everything that was missing in the [criminal] trial." The court observed there was some question at defendant's criminal trial whether defendant acted alone, "but now we know. Defendant admitted it under oath in another proceeding that he was the one who killed this young boy. As a result, there is no relief in this matter. He could be convicted on basically every theory of murder there currently is."

Defendant timely appealed.

6

## DISCUSSION

### A.   Applicable Law and Standard of Review

"Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437) (Stats. 2018, ch. 1015) amended sections 188 and 189 of the Penal Code to 'eliminate[ ] natural and probable consequences liability for murder as it applies to aiding and abetting, and [to] limit[ ] the scope of the felony-murder rule.' [Citation.]" (*People v. Lee* (2023) 95 Cal.App.5th 1164, 1173 (*Lee*).)

Assembly Bill No. 1437 also added former section 1170.95, now numbered section 1172.6, "which creates a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*People v. Lewis* (2021) 11 Cal.5th 952, 957.)  "If a petitioner makes a prima facie showing of relief under section 1172.6 . . . the resentencing court must issue an order to show cause for an evidentiary hearing. [Citations.]  At that hearing, the prosecution must prove beyond a reasonable doubt that the petitioner remains guilty of murder or attempted murder despite the amendments to sections 188 and 189." (*Lee*, *supra*, 95 Cal.App.5th at p. 1174; see § 1172.6, subds. (c), (d)(3).)  At the evidentiary hearing, "[t]he prosecutor and the petitioner may . . . offer new or additional evidence to meet their respective burdens." (§ 1172.6, subd. (d)(3).)  In determining whether the prosecution has met its burden, "[t]he trial court acts as an independent fact finder." (*People v. Rodriguez* (2024) 103 Cal.App.5th 451, 457.)

We review a resentencing court's denial order following a section 1172.6 evidentiary hearing for substantial evidence. (See *People v. Vargas* (2022) 84 Cal.App.5th 943, 951.)  Under that standard, "we review the entire record in the light most favorable to the judgment to determine whether it contains substantial

evidence — that is, evidence that is reasonable, credible, and of solid value — from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Grandberry* (2025) 116 Cal.App.5th 934, 946.) "We resolve all evidentiary conflicts and questions of credibility in favor of the judgment. [Citation.] We cannot reweigh the evidence or reassess witness credibility on our own." (*Ibid.*)

## B. Substantial evidence Supports the Trial Court's Ruling

Under the felony murder statute as amended by Senate Bill No. 1437, when a killing occurs during the commission of an enumerated felony, the actual killer is guilty of murder. (§ 189, subd. (e)(1).) Defendant concedes his criminal trial record contains substantial evidence he kidnapped Tolleson. Kidnapping is an enumerated felony under the felony murder statute. (§ 189, subd. (a).) Defendant admitted at the civil trial to personally killing Tolleson. That admission, combined with the evidence at the criminal trial that defendant kidnapped Tolleson, is substantial evidence supporting the trial court's conclusion defendant remains guilty of felony murder under the amended Penal Code, and is ineligible for relief under section 1172.6.[4]

Defendant contends his admission at the civil trial cannot constitute substantial evidence of guilt because it conflicted with the medical examiner's testimony at the criminal trial regarding the victim's time of death. Defendant argues, "[T]he forensic evidence, unchanged and unaugmented at the evidentiary

---

[4] Because there was substantial evidence to support guilt under a felony murder theory, we need not address the other theories upon which the resentencing court relied.

hearing, established that the victim was killed sometime between Monday, March 31, and Wednesday, April 2, and most likely killed Tuesday, April 1. [Citations.] The evidence of [defendant's] whereabouts, unchanged and unaugmented at the evidentiary hearing, showed it was physically impossible for [defendant] to have been at the scene of the murder after March 28." (Fn. omitted.) Defendant notes the prosecutor at his criminal trial expressly disclaimed the theory that defendant personally killed the victim because of the evidence of time of death.

Defendant observes our Supreme Court has held that a witness's testimony cannot support a conviction if "it describes facts or events that are physically impossible or inherently improbable." (*People v. Elliott* (2012) 53 Cal.4th 535, 585.) "The standard for rejecting a witness's statements on this ground requires ' " 'either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions.' " ' [Citation.]" (*People v. Thompson* (2010) 49 Cal.4th 79, 124 (*Thompson*).)

*Thompson* itself undercuts defendant's argument. In *Thompson*, the defendant argued a witness's testimony was inherently incredible because "(1) the angle of the bullet wounds in [the victim's] body . . . contradict[ed] [the witness's] testimony regarding where defendant stood when he shot [the victim], and (2) . . . [the victim's] body was found in the water, although [the witness] testified at trial he did not see the body fall in the water." (*Thompson, supra*, 49 Cal.4th at p. 124.) Our Supreme Court rejected the defendant's argument: "[The witness's] testimony did not recount facts that were physically impossible, nor did it exhibit falsity on its face. Rather, defendant's contention that [the witness's] testimony was inherently incredible depends on the asserted inconsistencies that defendant

9

argues exist between [the witness's] testimony and other evidence presented at trial.  We reject defendant's attempt to reargue the evidence on appeal and reiterate that 'it is not a proper appellate function to reassess the credibility of the witnesses.' [Citation.]" (*Id.* at pp. 124–125.)

Here, also, defendant is arguing his admission at the civil trial is inherently incredible because it conflicts with evidence at his criminal trial, in particular the medical examiner's opinion. It was for the resentencing court, however, as finder of fact, to assess credibility and weigh the evidence.  Medical examiners make mistakes sometimes, and there is no legal barrier to a finder of fact crediting a defendant's admission of guilt over contradictory forensic evidence.  The resentencing court could also have credited the forensic evidence but rejected the evidence establishing that defendant was not in West Covina at the time of death.  Like the defendant in *Thompson*, defendant is simply "reargu[ing] the evidence on appeal," which is not proper under the substantial evidence standard.  (*Thompson*, *supra*, 49 Cal.4th at p. 125.)

In his appellate briefing, defendant summarizes in detail the medical examiner's opinion, and asks, "What part of this did the resentencing court reasonably reject?"  Defendant misstates the standard of review — although we may reject evidence that is inherently improbable, we may not reject evidence merely because there is reason to disagree with the finder of fact's assessment of that evidence.  To do so would supersede the finder of fact's authority to determine credibility and weigh evidence.

Defendant suggests the resentencing court had to accept the medical examiner's evidence because the People presented no contrary evidence as to the time of death at the evidentiary hearing.  We fail to see how evidence that defendant later admitted to killing the victim is not contrary evidence.

10

It is of no moment the prosecutor at the criminal trial disclaimed the theory that defendant was the actual killer.  The prosecutor did not have the benefit of defendant's later admission, and therefore proceeded on the evidence available at the time.  Section 1172.6 expressly permits parties to submit new evidence at the evidentiary hearing, and therefore the resentencing court is not bound by the evidence upon which the prosecution relied at the criminal trial.

In his reply brief, defendant argues the jury necessarily found he was not the actual killer, but concedes "issue preclusion does not squarely fit this case because of the new evidence adduced at resentencing."  (See *People v. Hart* (2025) 113 Cal.App.5th 1099, 1114–1115 [distinguishing cases applying issue preclusion in section 1172.6 proceedings because in *Hart* the prosecution introduced new evidence at the evidentiary hearing].)  Even absent that concession, defendant has forfeited any argument based on issue preclusion by not raising it in his opening brief.  (See *People v. Duff* (2014) 58 Cal.4th 527, 550, fn. 9 [claim omitted from opening brief waived].)  We therefore do not address this argument further.

### DISPOSITION

The order is affirmed.
NOT TO BE PUBLISHED.


                                        BENDIX, J.
We concur:



ROTHSCHILD, P. J.                WEINGART, J.


11